# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23-CR-00680-JAR |
| REGINALD HUDSON, | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

The parties hereby agree, as follows:

**1. PARTIES:**

The parties are Defendant Reginald Hudson, represented by defense counsel Dramon Foster, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

    **A.**    **The Plea:** Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Counts I and II of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the

events set forth in the Indictment or set forth in St. Louis County Police Department Report 22-1596.

**B.     The Sentence**: The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

**3. ELEMENTS:**

As to Count I, Defendant admits to knowingly violating Title 18, United States Code, Section 2119, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    **(i)**    Defendant took a motor vehicle from the presence of another;

    **(ii)**    Defendant did so by means of force and violence or intimidation;

    **(iii)**    That the motor vehicle had been transported in interstate commerce; and

    **(iv)**    At or during the time Defendant took the motor vehicle he intended to cause death or serious bodily injury.

As to Count II, Defendant admits to knowingly violating Title 18, United States Code, Section 924(c)(1)(A), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    **(i)**    Defendant committed the crime of carjacking; and

   **(ii)** Defendant knowingly possessed and brandished a firearm in furtherance of that crime.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On or about January 12, 2022, officers received a call for a robbery at 11252 Marbella Drive, Apt 2. Victim M.K., met with officers and advised she had been robbed at gun point by two unknown black males. M.K. advised that her vehicle, phone and purse were taken. M.K. described the suspects as:

1. Suspect 1-Black male, black ski mask, black and white jacket, jeans, and a handgun with a drum magazine (later identified as co-Defendant Calhoun)
2. Suspect 2-Black male, red jacket, jeans, and a handgun (later identified as Defendant Hudson)

M.K. stated that she arrived at her apartment and when she walked into the complex, she heard someone say "I'm sorry". She looked up and observed the suspects on the staircase, coming down from the third to second floor, both pointing handguns at her. One of the defendant's demanded her car keys, purse and phone. M.K. complied. Defendant Hudson and co-defendant fled in M.K.'s car.

On January 13, 2022, a locate teletype was received from Kansas City Police Department indicating M.K.'s vehicle was located at 35th Street and Cleveland in Kansas City, Missouri. Based upon probable cause developed during the investigation, a state level search warrant was obtained

Page 3 of 13

for a residence located in proximity to where the vehicle was last seen, 3235 Cleveland Ave, located in Kansas City.

On February 8, 2022, the search warrant was executed. Inside the residence Defendant, Hudson was located in the hallway between two bedrooms near a plastic container of clothes and was taken into custody. During the search of the residence, officers located a black color trash bag containing miscellaneous items of clothing located in the southwest corner of the front living room. On top of the bag was a Hyvee name tag with the name Red H. Inside the black bag were a pair of denim jeans with white discoloration at the bottom and a distinct red stitching pattern just above the knees. The jeans were identical to the jeans worn by suspect 2, during and after the robbery. These clothes were taken to the lab and confirmed to have Defendant Hudson's DNA as the major contributor. Hanging on the headboard in the front living room of the residence was a red jacket with an American flag on the left sleeve, and a triangular patch on the right arm. The red jacket was identical to the jacket worn by suspect 2 before, during and after the robbery. This jacket was also tested for DNA and once again Defendant Hudson's DNA was listed as the major contributor. In the front living room laying on the floor, victim M.K.'s dark brown and light brown checkered, backpack style purse was located. Inside the purse was a visa debit card that belonged to the victim, a footlocker receipt and Champ's Sports receipt. In between the mattress and the exterior wall, a black color drum style magazine designed to function inside of a Glock style handgun was located. The magazine was loaded with 24 rounds of .40 caliber ammunition. Across from the mattress, in the dining room area, a black in color couch was sitting against an interior wall. Resting on top of the couch was a black EAA 9mm handgun, that was loaded with one magazine and 17, 9mm rounds. After searching the dining room, one of the detectives searched the hall that connected the bedrooms and located a Glock 22 model .40 caliber firearm. The firearm was loaded with an extended magazine containing 22 rounds of .40 caliber ammunition. The

firearm was in close proximity to where Defendant Hudson was taken into custody, and the Glock was compatible with the drum magazine located in between Defendant Hudson's mattress and the wall.

Further investigation was conducted as to Hudson's accomplice and eventual co-defendant. A state level search warrant was obtained for Defendant Hudson's cellular device. In the device there was evidence that he communicated often with co-Defendant Ki'juan Calhoun. The phone records included text messages between Hudson and Calhoun, indicating that they would be travelling to the St. Louis area and that they had a "job to do." Co-Defendant Calhoun's cellphone was analyzed for location information, which showed that he was with Defendant Hudson at M.K.'s residence for the carjacking and that both devices followed the same path from St. Louis to Kansas City after the carjacking.

Defendant Hudson admits to carjacking M.K. Defendant Hudson admits to possessing a firearm in furtherance of the carjacking. Defendant Hudson admits to brandishing the firearm during the carjacking. The Defendant admits taking possession of the 2019 Ford Fusion Vehicle Identification Number 3FA6P0D90KR105998. The Defendant admits that the Ford Fusion had been transported in interstate or foreign commerce and that by brandishing a firearm, Defendant took the vehicle by means of force and violence or intimidation and that he intended to cause death or serious physical injury.

## 5. STATUTORY PENALTIES:

As to Count I, Defendant Hudson fully understands that the maximum possible penalty provided by law is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

As to Count II, Defendant Hudson fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment **of not less than seven years**, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years. The sentence imposed in Count II must be imposed **consecutively** to any other sentence imposed.

## 6. U.S. SENTENCING GUIDELINES: 2024 MANUAL:

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### Estimated Total Offense Level for Count I

(i) **Total Offense Level:** The parties estimate that the Base Offense Level is 20, as found in U.S.S.G. Section 2B3.1(a). Because the offense involved a carjacking, 2 levels are added pursuant to Section 2B3.1(b)(5). After considering Defendant's Acceptance of Responsibility, the parties estimate the Total Offense Level for Count I is 19, based upon Section 2B3.1, unless defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not a Career Offender.

### Estimated Offense Level for Count II

(i) **Chapter 2 Offense Conduct:**

  **(a)** **Base Offense Level:** As to Count II, the parties recommend that the base offense level is found in Sentencing Guidelines Section 2K2.4(b) and represents the statutory, mandatory minimum term of imprisonment of 84 months, to be served consecutively to any other term of imprisonment, including any term of imprisonment imposed with respect to Count I.

  **(b)** **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply to Count II: None.

  **(ii)** **Chapter 3 and 4 Adjustments:** Pursuant to Sentencing Guidelines Section 2K2.4(b), Chapters 3 and 4 of the Sentencing Guidelines do not apply to Count II. Therefore, as to Count II, defendant is not entitled to the acceptance of responsibility reduction under Sentencing Guidelines Section 3E1.1.

  **(ii.)** **Chapter 3 Adjustments:**

  **(1).** **Acceptance of Responsibility:** The parties recommend as to Count I that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the

information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**A.** **Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**B.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**A.** **Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(i)** **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery and the guilty plea.

    **(ii)**   **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

    **B.**   **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **C.**   **Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **A.**   **Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

Page **9** of **13**

**B.     Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

**C.     Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D.     Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E.     Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**F.     Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately. In addition, the Court may impose restitution (in addition to any penalty authorized by law) which will also be due and payable

immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. Defendant agrees to provide full restitution to all victims of all charges in the Second Superseding Indictment.

      **G.**    **Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:

      In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

      Defendant fully understands that Defendant has the right to be represented by counsel, and

if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between Defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_4/25/25_
Date

_____
ASHLEY M. WALKER, #67175
Assistant United States Attorney

_4/25/25_
Date

_____
REGINALD HUDSON
Defendant

_4/25/25_
Date

_____
DRAMON FOSTER
Attorney for Defendant